SHEON v. KERR-MURRAY MANUFACTURING CO.

1. MASTER AND SERVANT — INJURY TO SERVANT — UNSAFE PLACE TO WORK—ASSUMPTION OF RISK.

A servant assumes the risk of falling from a place to work in which care is required to prevent falling.

2. SAME—NEGLIGENCE—EVIDENCE.

Where a servant employed to erect a railing around a high platform by joining the ends of gas pipes together with screw couplings, selected couplings from the master's toolhouse, and in the attempt to attach one to the railing fell to the ground, and there is no evidence that the coupling was defective except the mere fact of accident, no negligence on the part of the master appears. Per GRANT, BLAIR, and MONTGOMERY, JJ. If the coupling was defective, no one was so well situated as was the servant to discover that fact, and ordinary care on his part required him to discover the situation and protect himself from danger. Per OSTRANDER and MOORE, JJ.

Error to Muskegon; Chittenden, J., presiding.  Sub-
mitted June 15, 1906.  (Docket No. 69.)    Decided
October 1, 1906.

Case by William J. Sheon, by next friend, against the
Kerr-Murray Manufacturing Company for personal in-
juries.  There was judgment for defendant on a verdict
directed by the court, and plaintiff brings error.  Affirmed.

The defendant was engaged under a contract in erect-
ing for the Muskegon Traction & Lighting Company a
large gas tank, consisting of three cylinders.  The lower
cylinder was stationary, set in a concrete foundation, was
about 33 feet high and 60 feet in diameter.  The other
two cylinders moved inside the lower one.  Nine iron
columns stood at equal distances around the tank to sup-
port the inner cylinders when elevated.  At the top of the
lower cylinder was a boiler plate flat iron ring or circular
walk, 18 inches wide, bolted to the cylinder.  This was
intended for a walk for persons to examine the tank.  To
support the outer part of this walk iron stanchions were
bolted to the tank and columns, some 3 or 4 feet below
the walk.  Through the tops of these stanchions were
holes to pass pieces of pipe which, when connected, would
make a railing or guard for the walk.  This railing was
made of gas pipe.  Screw threads were cut on the ends
of the pipe.  Couplings about an inch and a half long
were used to connect and secure the pipe in position.  The
coupling was screwed over the end of the one pipe when
put in position, the end of the next pipe was then placed
in connection with it, and the coupling screwed back so
as to secure the two.  Plaintiff had been at work for
some months for the defendant, and was directed to con-
struct this railing.  Gas pipes were furnished bent to con-
form to the curve of the tank.  Another employé was
assisting the plaintiff.  The railing was nearly completed,
when they ran out of couplings.  Plaintiff informed de-
fendant's servant, Mr. Lynch, in charge of the work, of

that fact, and received instruction to go to the defendant's toolhouse and get some couplings. There were couplings of various sizes. Plaintiff selected four of the proper size, and testified that he showed them to Mr. Lynch, and asked him if they would do. Mr. Lynch took up one, looked at it and replied: "Yes, they are all right. Put them on." Plaintiff then proceeded with the work, had placed the end of the next pipe to the end of the one already in place, and, with his wrench, was screwing back the coupling over the two; had the coupling nearly in place, lacking two or three threads, when he fell to the ground, and was injured. He testified that he had to pull the end of the pipe into place, and that the tendency was to pull him off the walk on which he stood. The negligence charged is the furnishing of defective couplings. When the plaintiff had rested his case the court directed a verdict for the defendant on the ground that no negligence had been shown.

*James E. Sullivan* (*W. J. Turner*, of counsel), for appellant.

*Nims, Hoyt, Erwin, Sessions & Vanderwerp*, for appellee.

GRANT, J. (*after stating the facts*). Plaintiff was 19 years and 7 months old, and had had several years of experience in iron working, including the turning and making of threads. The place where he was at work required care to prevent falling. That risk he assumed. The work itself was not difficult, and required no great skill. Aside from the mere fact of the accident, there is no testimony tending to show a defective coupling, except that of plaintiff that the couplings looked old. Plaintiff and his witnesses all testified that age does not spoil couplings. It was plaintiff's duty to examine these couplings. He was required to oil the threads, and did so. He was competent to select the proper couplings. There was no necessity for his asking Mr. Lynch if they were all right.

Whether he used the one Mr. Lynch picked out of his hand and looked at, the record does not show. One of plaintiff's witnesses, a steam and pipe fitter, testified that "old couplings are often as good as when they were first used. They are used over and over again, dozens of times." One witness testified that these couplings "sometimes become to be not all right," and gave several reasons why, viz.: Cross-threading, stretching and expanding, kinking, and becoming stripped. There is no evidence that the coupling in question was defective in either of these particulars. If it had been, certainly the plaintiff should have detected it, and refused to use it. That this coupling fitted seems established beyond question. Plaintiff had screwed the coupling on to the railing pipe or guard full length, had placed the end of the other pipe in proper position, and had screwed the coupling to within two or three threads of its final position. While he was doing this, nothing developed to indicate any defect in the coupling. We might speculate as to how this accident happened, but that is not the province of either the court or the jury. Speculation and guesses cannot form the basis for verdicts. *Fuller* v. *Railroad Co.*, 141 Mich. 66. The court said, in directing the verdict:

"There is no testimony that this individual coupling was defective. It would be, I think, a violent presumption to presume that it was, because the boy testifies on the witness stand that he used his wrench in screwing the coupling on to the piece of pipe that was already in place. This would indicate that the thread was in working order and that he had to use not only his hands, but a wrench in order to screw the coupling on to the pipe that was already in place. It would be far more reasonable to suppose that the thread of the piece of pipe which was finally adjusted to this coupling, was made of a similar die, and therefore did not fit into the coupling, than that the coupling was defective."

The court correctly directed a verdict for the defendant. Judgment affirmed.

BLAIR and MONTGOMERY, JJ., concurred with GRANT, J.

OSTRANDER, J. (*concurring*).    I think there was evidence from which the jury might properly have determined that the coupling was defective—that it had expanded or that the threads in the coupling or on the pipe were worn, and that when turned to position the threads did not hold when subjected to the strain.    This fact, if it was a fact, could have been learned, perhaps, only from a trial with the pipes in position or from the ease with which the first connection was made.    I think it is clear, however, that there was no one so well situated as was plaintiff to discover the fact if it existed and that ordinary care on his part would necessarily have discovered the situation, and afforded him protection from danger.

MOORE, J., concurred with OSTRANDER, J.